JUSTICE MÁRQUEZ delivered the Opinion of the Court.
¶1 In this case, we are asked to determine whether the economic loss rule bars a statutory claim for civil theft where the theft also constitutes a breach of the parties' contract. We conclude it does not.
¶2 Chris Bermel contracted to provide engineering services for BlueRadios, Inc., a wireless data and voice communications company. In 2014, Bermel knowingly forwarded thousands of company emails containing proprietary information to his personal email account without authorization. For this conduct, the trial court found Bermel liable for breach of contract and for civil theft under section 18-4-405, C.R.S. (2018) (titled "Rights *1152 in stolen property" and also referred to as the "civil theft" statute). The statute allows the rightful owner of stolen property to recover the greater of $ 200 or three times the actual damages sustained, as well as costs and reasonable attorney fees.
¶3 Bermel argues that BlueRadios' remedies were limited to those for breach of contract, and that Colorado's economic loss rule bars BlueRadios' claim for civil theft. We disagree and hold that the judge-made economic loss rule cannot bar a statutory cause of action. Accordingly, we affirm the judgment of the court of appeals and remand the case for further proceedings consistent with this opinion.[1]
I. Facts and Procedural History
¶4 Petitioner Chris Bermel worked as an engineer for Respondent, BlueRadios, Inc., starting in June 2009. As part of their working relationship, Bermel and BlueRadios entered into certain agreements, including a "Contractor Agreement" setting forth Bermel's work duties and compensation and a "Proprietary Information and Inventions Agreement" governing Bermel's access to BlueRadios' company information and materials (collectively, "the Agreements"). Paragraph 6 of the Contractor Agreement, which addresses "Confidential or Proprietary Information," incorporated the Proprietary Information and Inventions Agreement in its entirety.
¶5 The Agreements defined "Proprietary Information" to include any information "developed, created, or discovered by or on behalf of [BlueRadios]" that "has commercial value in [BlueRadios'] business," and they further defined "Company Materials" to include "documents or other media or tangible items that contain or embody Proprietary Information or any other information concerning the business, operations or plans of [BlueRadios]."
¶6 The Agreements prohibited Bermel from "remov[ing] any Company Materials [including Proprietary Information] from the business premises of [BlueRadios] ..., except as [Bermel was] required to do in connection with performing [his] duties" under the Contractor Agreement. Additionally, the Agreements required Bermel to return Company Materials upon the termination of his working arrangement with BlueRadios. The Contractor Agreement provided that BlueRadios would be entitled to injunctive relief if Bermel revealed or threatened to reveal confidential information or trade secrets without authorization.
¶7 Anticipating that he might end up in litigation with BlueRadios, Bermel knowingly forwarded thousands of emails and attachments in his BlueRadios business email account to his personal Gmail account without authorization in June or July 2014. These forwarded emails contained confidential and proprietary information, including trade secrets.
¶8 In August 2014, Bermel filed suit against BlueRadios, asserting that BlueRadios owed him unpaid wages and expenses he incurred on behalf of the business. Bermel brought claims for breach of contract, unjust enrichment, and violation of the Colorado Wage Protection Act, § 8-4-109(1)(a), (b), C.R.S. (2018).
¶9 Alleging that Bermel had improperly taken confidential and proprietary information from the company, BlueRadios filed counterclaims against Bermel, including claims for breach of contract, civil theft, conversion, and violation of the Uniform Trade Secrets Act ("UTSA").
¶10 Bermel moved for summary judgment on BlueRadios' counterclaims. The trial court initially granted the motion as to the UTSA counterclaim and denied the motion as to the remaining counterclaims. However, the trial court later granted BlueRadios' motion to reconsider its ruling as to the UTSA counterclaim and allowed all of BlueRadios' counterclaims to proceed to a bench trial.
*1153 ¶11 After the close of evidence at trial, Bermel moved for a directed verdict on BlueRadios' civil theft counterclaim, arguing that this counterclaim was barred by the economic loss rule. The court denied Bermel's motion, reasoning that the economic loss rule does not bar a statutory cause of action. Ultimately, the court found Bermel liable on all of BlueRadios' counterclaims, awarding BlueRadios $ 200 in statutory damages on the civil theft and conversion counterclaims[2] and $ 1 in nominal damages on each of the other counterclaims under the UTSA and for breach of contract.
¶12 The court of appeals affirmed the trial court's conclusion that the economic loss rule did not bar BlueRadios' civil theft counterclaim. Bermel v. BlueRadios, Inc. , 2017 COA 20, ¶ 29, 442 P.3d 923. The court reasoned that the economic loss rule is "a judge-made" rule intended to "maintain the boundary between the law of contracts and torts," whereas civil theft is a "legislatively created cause of action." Id. at ¶¶ 23-24. The court thus concluded that, under separation of powers principles, the judicially constructed economic loss rule cannot preclude a statutory claim for civil theft. Id. at ¶¶ 24-29.
¶13 The division below acknowledged its disagreement with a different division's ruling in Makoto USA, Inc. v. Russell , 250 P.3d 625 (Colo. App. 2009). The Makoto division held that the economic loss rule barred a plaintiff's civil theft claim because there was no indication that the legislature intended for the rights in stolen property statute to provide a remedy in addition to the plaintiff's existing contract law remedies. Id. at 629.
¶14 We granted Bermel's petition for a writ of certiorari to review the court of appeals' ruling on BlueRadios' civil theft counterclaim.[3]
II. Analysis
¶15 Under Colorado's economic loss rule, "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." Town of Alma v. AZCO Constr., Inc. , 10 P.3d 1256, 1264 (Colo. 2000). Our previous cases have applied the economic loss rule to bar only certain common law negligence claims. Today, we are asked to determine whether the judge-made economic loss rule may also bar a statutory cause of action. In particular, we are asked to decide whether the economic loss rule may bar a claim for civil theft under section 18-4-405 where the theft also constitutes a breach of the parties' contract.
¶16 Bermel urges us to adopt the reasoning of the Makoto division and hold that the legislature did not intend to make redress under section 18-4-405 available in breach-of-contract cases. He argues that because forwarding himself Company Materials breached his Agreements with BlueRadios, the economic loss rule bars the company from asserting a counterclaim against him under the civil theft statute for the same conduct.
¶17 BlueRadios responds that the division below correctly held that the economic loss rule does not bar statutory claims for civil theft, and asks us to affirm that holding.
¶18 We begin by reviewing our adoption and previous applications of the economic loss rule, noting that we have applied the rule only to common law tort claims for negligence and negligent misrepresentation, and have never addressed whether the rule bars statutory claims for civil theft. Next, we describe the split of authority in the court of appeals on that question. We then consider BlueRadios' argument that civil theft is not a tort, and therefore that recovery for civil theft cannot be barred by the economic loss rule. Ultimately, we conclude that, even if civil theft is a claim sounding in tort, separation of powers principles dictate that the judge-made economic loss rule cannot bar a statutory cause of action. We observe that it *1154 would be particularly inappropriate to apply the economic loss rule to bar statutorily imposed liability for intentionally wrongful conduct. Accordingly, we affirm the judgment of the court of appeals and remand with instructions to return the case to the trial court for further proceedings consistent with this opinion.[4]
A. Colorado's Economic Loss Rule
¶19 Broadly speaking, the economic loss rule is a judge-made doctrine that "serves to maintain a distinction between contract and tort law." Alma , 10 P.3d at 1262. Under Colorado's rule as we announced it in Alma , "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." Id. at 1264.
¶20 In adopting the economic loss rule in Colorado, we expressed concern about imposing both contract and tort liability for the same economic injury. We compared contract and tort law, observing that "contract obligations arise from promises made between parties," whereas "[t]ort obligations generally arise from duties imposed by law ... without regard to any agreement or contract." Id. at 1262. We reasoned that "[l]imiting the availability of tort remedies" for economic losses when a contract exists between the parties holds parties to the terms of their bargain and serves to "encourage parties to confidently allocate risks and costs ... without fear that unanticipated liability may arise in the future."[5] Id. Relatedly, we were concerned that the threat of liability in tort for a breach of contract causing only economic losses might undermine the parties' expectations.[6] Id. In addition to considerations of parties' primary behavior in bargaining, our adoption of the rule was motivated by a concern that the possibility of simultaneous liability in tort and contract could generate *1155 confusion and unnecessary complexity in litigation. Id. at 1263 & n.11.
¶21 Notably, however, since adopting the economic loss rule, we have applied it only to bar common law tort claims of negligence or negligent misrepresentation. See id. at 1264-65 (holding that economic loss rule barred a town's negligence claim against a contractor for careless construction of the town's water supply); BRW, Inc. v. Dufficy & Sons, Inc. , 99 P.3d 66, 67-68 (Colo. 2004) (holding that economic loss rule barred negligence and negligent misrepresentation claims brought by subcontractor against engineering firm and inspector); Grynberg v. Agri Tech, Inc. , 10 P.3d 1267, 1268 (Colo. 2000) (holding that economic loss rule barred negligence claim brought by investors against investment program administrators).
¶22 Indeed, even our cases holding that the rule did not bar tort liability dealt only with this narrow set of common law claims. See Van Rees v. Unleaded Software Inc. , 2016 CO 51, ¶ 15, 373 P.3d 603, 607 (holding that economic loss rule did not bar claims for negligent misrepresentation based on misrepresentations made prior to the formation of the contracts at issue); A.C. Excavating v. Yacht Club II Homeowners Ass'n, Inc. , 114 P.3d 862, 864 (Colo. 2005) (holding that economic loss rule did not bar homeowners association's negligence claim against construction subcontractors). Cf. S K Peightal Eng'rs, LTD v. Mid Valley Real Estate Solutions V, LLC, 2015 CO 7, ¶¶ 25-26, 342 P.3d 868, 876 (remanding for determination of whether economic loss rule bars negligence claims of third-party beneficiary of commercially negotiated contract).
B. Split of Authority in the Court of Appeals
¶23 This court has not previously considered whether the economic loss rule bars a cause of action for civil theft under the rights in stolen property statute. See Van Rees , ¶ 20, 373 P.3d at 608 (declining to reach the issue). However, three divisions of the court of appeals have grappled with that question and arrived at different conclusions.
¶24 In the first case, Rhino Fund, LLLP v. Hutchins, a division of the court of appeals considered whether the economic loss rule barred an investor from suing an investment fund owner for conversion and civil theft where the owner had diverted proceeds that were required, by contract, to be placed in escrow to secure repayment of the investor's loan. 215 P.3d 1186, 1194-95 (Colo. App. 2008). The division held the rule did not bar the investor's claims. Id. at 1194. It agreed with a Florida court's reasoning that a "legislatively imposed duty to avoid civil theft" was independent from a contractual obligation to transfer money to the plaintiff, and further that the economic loss rule "cannot abrogate a legislatively created scheme designed to extend a civil remedy to those harmed by alleged criminal activity." Id. at 1194 (quoting Burke v. Napieracz , 674 So.2d 756, 758-59 (Fla. Dist. Ct. App. 1996) ). Ultimately, the division's holding was limited to the facts before it. It concluded that because the investor had no contractual remedy against the fund owner (who was not a party to the underlying contract), and because the owner's intentional diversion of funds for his own benefit was an act independent from his failure to place the funds in escrow, the economic loss rule did not shield the fund owner from liability in tort. Id. at 1194-95.
¶25 The following year, in Makoto , a different division rejected the argument that "the economic loss rule, as a judicial construct, cannot be applied to preclude a statutory claim." 250 P.3d at 629. The division agreed that "if the legislature intended to provide a remedy in addition to a contractual one, the statutory remedy would trump the economic loss rule." Id. It nevertheless disagreed that the legislature intended the rights in stolen property statute to provide extra-contractual remedies. Id. In reaching this conclusion, the division cited West v. Roberts , 143 P.3d 1037, 1045 (Colo. 2006), and Keybank v. Mascarenas , 17 P.3d 209, 214 (Colo. App. 2000), cases that held that a provision of the Uniform Commercial Code ("UCC") limited the types of transactions that were actionable under the rights in stolen property statute. 250 P.3d at 629. Ultimately, the division distinguished the facts before it from those in Rhino Fund, holding that because the contract and theft claims in Makoto were *1156 "inextricably intertwined," the economic loss rule barred the claim for civil theft. Id.
¶26 Finally, in a split with the Makoto division, the division below held that, as a matter of law, the judge-made economic loss rule "cannot preclude a claim under the civil theft statute because the legislature explicitly provided that cause of action, and its attendant remedy, to victims of theft." Bermel , ¶ 24. The division warned that to abrogate a legislative enactment through judicial policymaking would create separation of powers issues. Id. at ¶ 25. It "disagree[d] with Makoto 's focus on whether the legislature 'intended to expand contractual remedies,' " reasoning that the proper inquiry is "simply whether the legislature intended to establish a cause of action for victims of theft." Id. at ¶ 29. The division observed that such intent was not only evident from the statute's plain terms but confirmed by this court. Id. at ¶ 22 (citing Itin v. Ungar , 17 P.3d 129, 134 (Colo. 2000) ("[T]he General Assembly intended the [civil theft] statute to provide an owner with a private remedy against the taker." (emphasis omitted))). It thus held the economic loss rule could not bar a claim for civil theft under the rights in stolen property statute. Id. at ¶ 29.
¶27 Bermel urges us to adopt the reasoning of the Makoto division. BlueRadios counters that Rhino Fund and the division below had the better analyses, and argues that the economic loss rule does not bar its counterclaim for civil theft because (1) the judicially created economic loss rule cannot bar a statutory cause of action; (2) civil theft is not a tort, and thus cannot be barred by the economic loss rule; and (3) Bermel's duty under the civil theft statute is independent from his contractual duties under the Agreements. BlueRadios also contends that applying the economic loss rule would defeat the purpose of the rights in stolen property statute. We consider these arguments below.
C. Do Claims for Civil Theft Sound in Tort?
¶28 Under section 18-4-405, the rightful owner of stolen property may recover that property from the taker (and from any person in whose possession the owner finds the property), and may also recover treble damages or $ 200, whichever is greater:
All property obtained by theft, robbery, or burglary shall be restored to the owner, and no sale, whether in good faith on the part of the purchaser or not, shall divest the owner of his right to such property.... In any such action, the owner may recover two hundred dollars or three times the amount of the actual damages sustained by him, whichever is greater, and may also recover costs of the action and reasonable attorney fees....
§ 18-4-405.
¶29 BlueRadios argues that the civil theft statute does not create a cause of action sounding in tort, but instead provides a primarily punitive remedy for criminal conduct.
¶30 "[T]he notion of a 'tort' is notoriously difficult to define with any degree of precision." Colorado Dep't of Transp. v. Brown Grp. Retail, Inc. , 182 P.3d 687, 690 (Colo. 2008). BlueRadios is correct that, in the context of the Colorado Governmental Immunity Act, §§ 24-10-101 to - 120, C.R.S. (2018) ("CGIA"), we have explained that the determination of whether an action lies or could lie in tort requires considering the nature of the injury and the relief sought. Robinson v. Colo. State Lottery Div. , 179 P.3d 998, 1003 (Colo. 2008). "When the injury arises either out of conduct that is tortious in nature or out of the breach of a duty recognized in tort law, and when the relief seeks to compensate the plaintiff for that injury , the claim likely lies in tort or could lie in tort for purposes of the CGIA." Id. (emphasis added). As we have previously observed, the placement of the rights in stolen property statute in the Criminal Code and its allowance of treble damages "strongly suggest that [the] section was intended to serve primarily a punitive, rather than a remedial, purpose." In re Marriage of Allen , 724 P.2d 651, 656 (Colo. 1986).
¶31 Moreover, as BlueRadios points out, other features of the statute manifest its concern with criminal conduct. To recover under the statute, the owner must prove that the taker committed acts constituting at least one of the statutory crimes of theft, robbery, *1157 or burglary. Itin , 17 P.3d at 134. We have acknowledged that because section 18-4-405 does not define theft, robbery, or burglary, these terms may be understood within the broader criminal statutory framework, given the statute's location in the Criminal Code. West , 143 P.3d at 1040. In other words, to recover on a claim for civil theft under section 18-4-405, a rightful owner of stolen property must establish the statutory elements of criminal theft, including the requisite culpable mental state. See, e.g. , § 18-4-401 ("A person commits theft when he or she knowingly obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception...."); Itin , 17 P.3d at 134 (rightful owner of stolen property may recover treble damages, fees, and costs under section 18-4-405"[o]nly upon proof of the criminal act of theft").
¶32 On the other hand, we have described a tort broadly as "legally improper conduct that causes harm and imposes civil liability." Vigil v. Franklin , 103 P.3d 322, 324-25 (Colo. 2004) (citing Dan B. Dobbs, The Law of Torts § 1 (1st ed. 2000)). And we have observed that although "tort law largely finds its origin in the common law, ... legislatures increasingly participate in determining what conduct constitutes a tort." Id. at 325 ; see also Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, Hornbook on Torts § 1.1 (2d. ed. 2015) ("[S]tatutes or even state or federal constitutions may make certain conduct legally wrongful and may permit recovery of damages for such conduct." (footnotes omitted)).
¶33 Section 18-4-405 provides the rightful owner of stolen property a private right of action against the wrongdoer without requiring proof of a criminal conviction. Itin , 17 P.3d at 134 (concluding that "the General Assembly intended the Rights in Stolen Property statute to provide an owner with a private remedy against the taker"). Under Vigil , because civil theft is wrongful conduct-indeed, intentionally wrongful conduct-that causes harm for which courts will impose civil liability, it would appear to amount to a tort in Colorado.
¶34 We need not resolve today whether a claim for civil theft under section 18-4-405 is a claim sounding in tort because even assuming that it is, we conclude that it cannot be barred by the economic loss rule.
D. The Economic Loss Rule Does Not Bar Statutory Claims for Civil Theft
¶35 In enacting the rights in stolen property statute, the legislature expressly provided a cause of action and remedy to victims of theft. And the legislature crafted the statute to be punitive by "depriving thieves ... of the immediate fruits of their criminal activities and by making such persons pay damages that by definition are three times greater than the amount necessary to compensate their victims." Marriage of Allen , 724 P.2d at 656. The availability of treble damages and attorney fees for civil theft reflects the legislature's displeasure with the proscribed conduct and its desire to deter it.
¶36 In contrast to section 18-4-405, the economic loss rule is merely a judicial construct. We adopted the rule in reference to "principles" that we believe "serve an important role and should be observed and applied in Colorado jurisprudence." Alma , 10 P.3d at 1263. As we explained in Alma , we were concerned with maintaining the boundary between contract and tort, protecting parties' expectations in bargaining, encouraging parties to build cost considerations into their contracts, and simplifying litigation. Id. at 1262-63.
¶37 The division below correctly recognized that to limit or abrogate a clear legislative pronouncement by reason of such judicial policy concerns would offend the separation of powers.[7] See Bermel , ¶ 25 ; see also United States v. Bailey , 444 U.S. 394, 406, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980) ("Principles derived from common law ... must bow to legislative mandates."). Even if the economic *1158 loss rule serves "a laudable goal," Bermel , ¶ 24, it is not this court's place to substitute the judiciary's policy judgments for those of the General Assembly. See, e.g. , Eastwood v. Horse Harbor Found., Inc. , 170 Wash.2d 380, 241 P.3d 1256, 1268 (2010) (Madsen, C.J., concurring) ("[W]e cannot apply the common law economic loss rule to nullify the statutory cause of action for waste without violating separation of powers principles and encroaching on the legislature's authority to establish a cause of action."); Shaw v. CTVT Motors, Inc., 232 Ariz. 30, 300 P.3d 907, 910 (Ct. App. 2013) ("The economic loss rule is a judicially created limitation on common law remedies. It is not a substantive restraint on the power of the Legislature...."). Cf. Boehme v. U.S. Postal Serv. , 343 F.3d 1260, 1266 (10th Cir. 2003) (holding that "Colorado's economic loss rule has no application" to bar a landlord's statutory unlawful detention claim because "the Colorado legislature has provided a statutory remedy to landlords that 'exist[s] independent of a breach of contract claim' " (quoting Alma , 10 P.3d at 1263 )).
¶38 We are especially wary of limiting the availability of a statutory remedy that so long predates this court's adoption of the economic loss rule. The original rights in stolen property statute was enacted by the Colorado Territorial Legislature in 1861.[8] It was revised and reenacted with the Colorado Criminal Code in 1971, see Ch. 121, sec. 1, § 40-4-405, 1971 Colo. Sess. Laws 388, 429, and was last amended in 1987, see Ch. 129, sec. 1, § 18-4-405, 1987 Colo. Sess. Laws 668, 668. In contrast, we only expressly adopted the economic loss rule in Alma in 2000. And in recounting the history and development of the rule in different jurisdictions, we noted that Colorado's court of appeals first applied it in a published decision in 1988. See Alma , 10 P.3d at 1261 (discussing Jardel Enters., Inc. v. Triconsultants, Inc. , 770 P.2d 1301 (Colo. App. 1988) ). Thus, even the earliest adoption of the economic loss rule by a Colorado appellate court occurred after the General Assembly's latest amendment to section 18-4-405.
¶39 While this court adheres to the rule that statutes are "not presumed to alter the common law" unless the statute "expressly [so] provides," Robinson v. Kerr , 144 Colo. 48, 355 P.2d 117, 120 (1960), that rule is rooted in the principle that a legislature is understood to act against a background of well-established common law rules. See Astoria Fed. Sav. & Loan Ass'n v. Solimino , 501 U.S. 104, 108, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991). But that presumption cannot logically apply here; the General Assembly cannot be understood to have legislated against a background of common law that did not yet exist. Hence, by asking whether the legislature "intended to expand contractual remedies" when it enacted the rights in stolen property statute, the Makoto division's analysis erroneously assumed the legislature's awareness of policy rationales for an economic loss rule that had not yet been adopted. See Makoto , 250 P.3d at 629.
¶40 Nor are we persuaded by the Makoto division's conclusion that West v. Roberts and Keybank v. Mascarenas evince legislative intent to limit the remedy available under the rights in stolen property statute by way of the economic loss rule. Both West and Keybank involved an apparent conflict between two statutory provisions, namely, section 18-4-405 and a provision of the later-enacted UCC. See West , 143 P.3d at 1039-40 ; Keybank , 17 P.3d at 212. This court in West and the court of appeals division in Keybank were thus tasked with resolving specific, discordant pronouncements from the legislature. See West , 143 P.3d at 1045 (concluding that the UCC "abrogate[d] the stolen property statute so that 'theft' in that provision does not include any theft in which an owner voluntarily relinquishes property to a thief under a transaction of purchase"); Keybank , 17 P.3d at 214 (concluding that " 'theft' as used in section 18-4-405 does not encompass a larceny by trick or fraud ... in which a *1159 person voluntarily delivers possession of his or her property under an agreement, giving the perpetrator authority to sell it under the UCC"). These decisions bear no indication that the legislature intended the rights in stolen property statute to be limited in the absence of a conflicting statutory provision. No such conflict is properly before us.
¶41 Regardless, the Makoto division overstepped by looking beyond the text of the statute to discern the legislature's intent without engaging in even a perfunctory analysis of whether the language of the statute is ambiguous. See Young v. Brighton Sch. Dist. 27J , 2014 CO 32, ¶ 11, 325 P.3d 571, 576 ("We look first to the language of the statute, giving words their plain and ordinary meaning; if the plain language of the statute demonstrates a clear legislative intent, we look no further."). Because the legislature's intent to provide a statutory remedy to victims of theft is plain from the face of the statute, no contrary statutory provision is before us, and there has been no allegation that the statute is unconstitutional, we are without any basis in law to limit the remedy it provides.
¶42 Finally, we observe that to apply the economic loss rule to bar BlueRadios' statutory counterclaim for civil theft would undermine a key purpose of the statute, which is to remedy even purely economic losses.[9] In Itin , for example, a jury found the defendant liable for civil theft for transferring the plaintiff's funds and thereby permanently depriving him of his money. 17 P.3d at 131. It would be especially inappropriate to apply the economic loss rule to bar a claim the legislature expressly made available to compensate for economic loss, particularly where such loss is caused by intentionally wrongful conduct. Cf. Alma , 10 P.3d at 1263 (reasoning that for common law claims "expressly designed to remedy economic loss ..., the economic loss rule has no application"); Sharkey, supra note 5, at 1017-18 (noting the well-accepted exclusion of intentional torts from the economic loss rule).
III. Conclusion
¶43 In sum, we hold that the judge-made economic loss rule cannot bar BlueRadios' statutory counterclaim for civil theft. To the extent Makoto is inconsistent with this opinion, it is overruled. We affirm the judgment of the court of appeals and remand for further proceedings consistent with this opinion.
JUSTICE GABRIEL dissents, and JUSTICE HART joins in the dissent.
JUSTICE HOOD does not participate.

The court of appeals reversed the trial court's entry of summary judgment in favor of BlueRadios on Bermel's Colorado Wage Protection Act ("CWPA") claim. Bermel v. BlueRadios, Inc. , 2017 COA 20, ¶¶ 30-39, 442 P.3d 923. We therefore remand for further proceedings on Bermel's CWPA claim and for determination of BlueRadios' costs and reasonable fees under the civil theft statute.

The court included damages for conversion in its award of statutory damages for civil theft.

We granted certiorari review of the following issue: "Whether the economic loss rule bars Respondent's simultaneous recovery for its breach of contract claim and for its civil theft claim under section 18-4-405, C.R.S. (2016), (the "civil theft statute") based on Petitioner's single act of breach of contract."

In his briefing and oral argument before this court, Bermel suggested for the first time that the UTSA precludes BlueRadios' civil theft claim. We decline to address this issue, which asserts both a new and independent ground for barring this claim. In other words, the existence of any purported conflict between the rights in stolen property statute and the UTSA does not hinge on the application of the economic loss rule. Not only is this argument beyond the scope of the question for which we granted certiorari review, but it appeared nowhere in Bermel's petition to this court. See People v. Naranjo , 2017 CO 87, ¶ 16 n.2, 401 P.3d 534, 538 n.2 (declining to consider issue not raised in the petition for certiorari review). Further, Bermel failed to raise this argument before the lower courts. For these reasons, this issue is not properly presented for our consideration. See Estate of Stevenson v. Hollywood Bar & Café, Inc. , 832 P.2d 718, 721 (Colo. 1992) ("Arguments never presented to, considered or ruled upon by a trial court may not be raised for the first time on appeal."). The only question properly before us is whether the economic loss rule bars a statutory claim for civil theft.

At least one leading tort scholar has sought to clarify doctrinal confusion in this area by distinguishing "consensual" cases (those involving a contractual or quasi-contractual relationship between the plaintiff victim and the defendant tortfeasor) from "stranger" cases (those lacking such a contractual or quasi-contractual relationship) and thoughtfully exploring the theoretical justifications for the economic loss rule in these distinct contexts. See generally Catherine M. Sharkey, In Search of the Cheapest Cost Avoider: Another View of the Economic Loss Rule , 85 U. Cin. L. Rev. 1017 (2018) (discussing conventional rationales and proposing a unifying theoretical justification for the economic loss rule based on cheapest cost avoider principles).

Although our cases have emphasized the need to "prevent tort law from 'swallowing' the law of contracts," Alma , 10 P.3d at 1260, we have been equally clear that we must also "be cautious of the corollary potential for contract law to swallow tort law," Van Rees v. Unleaded Software, Inc. , 2016 CO 51, ¶ 19, 373 P.3d 603, 608. Defining the proper balance between these two areas of law is not the task before us today, but we note that deference to private ordering must sometimes yield to the law's interest in compensation and redress for wrongful, injurious conduct. To the extent the economic loss rule treats parties' assumption of contractual duties as disclaimers of their existing obligations in tort, it should be applied with some of the circumspection with which we have approached other exculpatory agreements. See Jones v. Dressel , 623 P.2d 370, 376 (Colo. 1981) ("An exculpatory agreement, which attempts to insulate a party from liability from his own negligence, must be closely scrutinized...."). And just as we have held that "[u]nder no circumstances will an exculpatory agreement be permitted to shield against a claim of willful and wanton negligence," McShane v. Stirling Ranch Prop. Owners Ass'n, Inc. , 2017 CO 38, ¶ 20, 393 P.3d 978, 983, we note that the economic loss rule generally should not be available to shield intentional tortfeasors from liability for misconduct that happens also to breach a contractual obligation.

Of course, courts have the power, and the obligation, to strike down legislative enactments that are unconstitutional.

Terr. Laws of Colo. Div. VI, Sec. 58 (1861) ("All property obtained by larceny, robbery or burglary, shall be restored to the owner; and no sale, whether in good faith on the part of purchaser, or not, shall divest the owner of his right to such property; such owner may maintain his action, not only against the felon, but against any person in whose possession he may find the same.").

To the extent that section 18-4-405 also redresses losses of property that do not constitute purely economic injury, such claims lie beyond the reach of the economic loss rule in any event. Cf. Richard A. Posner, Common-Law Economic Torts: An Economic and Legal Analysis , 48 Ariz. L. Rev. 735, 735 (2006) (classifying conversion, or "the wrongful taking of property," not as an economic tort but as a tort involving property damage). And to the extent a plaintiff seeks return of stolen property under the statute, such restitutionary recovery is likewise beyond the scope of the rule. See Dan B. Dobbs, An Introduction to Non-Statutory Economic Loss Claims , 48 Ariz. L. Rev. 713, 717-18 (2006) ("[I]f the defendant's gains are truly traceable to the plaintiff's corresponding loss, and reflect the defendant's receipt of value that in justice and good conscience belongs to the plaintiff, the economic loss rule should have no application to bar the restitutionary recovery.").